*JH*

**FILED**

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

APR 2 7 2007    NF

*APR. 27 2007*

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

| | |
|---|---|
| BCWC LLC, an Illinois limited liability company, and MMWC LLC, an Illinois limited liability company, | )<br>)<br>) |
| Plaintiffs, | |
| v. | |
| READING ROCK, INC., an Ohio corporation, | )<br>) |
| Defendant. | ) |

**07CV2356**
**JUDGE ASPEN**
**MAGISTRATE JUDGE ASHMAN**

## COMPLAINT

BCWC LLC and MMWC LLC, by their attorneys, Seyfarth Shaw LLP, for their breach

of contract Complaint against Reading Rock, Inc., state as follows:

### The Parties

1.      BCWC LLC is an Illinois limited liability company organized under the laws of

the State of Illinois, with its principal place of business located in Illinois.  BCWC is a manager-

managed limited liability company and has as its sole member Beatrice G. Crain, who is a citizen

of the State of Illinois.  Neither BCWC LLC nor its member is a citizen of the State of Ohio.

2.      MMWC LLC is an Illinois limited liability company, organized under the laws of

the State of Illinois, with its principal place of business located in Illinois.  MMWC is a

manager-managed limited liability company and has as its sole member Michael Maling, who is

a citizen of the State of Illinois.  Neither MMWC LLC nor its member is a citizen of the State of

Ohio.

3.      Reading Rock, Inc. ("Reading Rock") is an Ohio corporation, organized under the laws of the State of Ohio, with its principal place of business located in Cincinnati, Ohio. Reading Rock is engaged in the business of manufacturing and supplying masonry products.

### Jurisdiction and Venue

4.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §1332(a)(1), because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

5.      Venue in this judicial district is proper under 28 U.S.C. §1391(a) because BCWC LLC and MMWC LLC reside in this judicial district and a substantial part of the events giving rise to their claim occurred in this judicial district.

### Breach of Contract

6.      At all times relevant here, BCWC LLC and MMWC LLC were, by assignment, the beneficiaries with power of direction under Trust Agreement dated March 11, 1970, known as Trust Number 39745 (the "Trust Agreement"), with Chicago Title Trust as Successor Trustee for LaSalle National Bank as trustee ("Trustee") under the Trust Agreement the ("Land Trust"). At all times relevant hereto, the Land Trust held title to certain commercial property commonly known as 1401 Harvester Street, West Chicago, Illinois (the "Premises").

7.      The Trust Agreement vested the beneficiaries with the right to manage and control the Premises, including the right to collect and retain rents from any lessee of the Premises. Specifically, the Trust Agreement provides, in part: "[t]he beneficiary or beneficiaries . . . shall have the management of said property and control the selling, renting and handling thereof . . . and each beneficiary or his or her agent shall collect and handle his or her share of

2

the rents . . . and the trustee shall have no duty in respect to such management or control, or the handling or application of such rents . . . ."

8.    Trustee, as Lessor, and as agent of the beneficiaries of the Land Trust, entered into a lease agreement dated July 1, 2004 (the "Lease") with Reading Rock, as Lessee, for the Premises, as fully described in the Lease. A true and correct copy of the Lease is attached.

9.    The Lease states that the term of the lease was "from June 15, 2004 to and including May 31, 2007." (Lease, p. 1.)

10.    Paragraph 2 of the Lease, entitled "CONDITION OF PREMISES," states, in part, that:

> The Lessee has examined and knows the condition of the Demised Premises, and has received the same in good order and repair, and acknowledges that no representations as to the condition and repair thereof have been made by the Lessor . . . Lessee will keep said premises, including all appurtenances, in good repair . . . and will keep said premises, including adjoining alleys, in a clean and healthful condition, according to the ordinances of the City of West Chicago . . . .

(Lease, p. 2.)

11.    Paragraph 8 of the Lease, entitled "REPAIRS," states, in part, that:

> Except for repairs to the roof and the structural components of the improvements . . . the Lessor shall not be obliged to incur any expense for repairing any improvements upon said Demised Premises or connected therewith and the Lessee at its own expense will keep all improvements otherwise in good repair . . . and will comply with all local or general regulations, laws and ordinances applicable thereto . . . .

(Lease, p. 8.)

12.    Paragraphs 1 and 2 of the Lease state that Reading Rock was to pay monthly base rent in specified monthly installments plus other expenses defined as Additional Rent. (Lease, pp. 1 and 3-5.)

3

13.     Paragraph 19.01 of the Lease, entitled "EVENTS OF DEFAULT," at subparagraphs A and G, state that "[i]f Lessee fails to pay any installment of rent or Additional Rent when due" or if "Lessee abandons the . . . Premises," such would constitute an event of default by Reading Rock of its obligations under the Lease. (Lease, pp. 8-9.)

14.     Paragraph 19.02 of the Lease, entitled, "LESSOR'S REMEDIES," at subparagraphs A and B, state that upon the occurrence of an Event of Default, Lessor, at its option, may "[t]erminate this Lease and Lessee's right to possession of the Demised Premises" or [t]erminate Lessee's right to possession of the Demised Premises without terminating this Lease . . . ." (Lease, pp. 9-10.)

15.     Paragraph 19.03 of the Lease, entitled "ATTORNEYS' FEES," states that Reading Rock "shall pay, upon demand, all costs and expenses, including reasonable attorneys' fees, incurred by Lessor in successfully enforcing Lessee's obligations under the Lease and or resulting from Lessee's default under this Lease." (Lease p. 10.)

16.     Lessor fully performed its obligations under the Lease.

17.     Reading Rock, however, breached its obligations under the Lease by failing to pay rent, Additional Rent, and other sums due pursuant to the Lease.

18.     Reading Rock further breached its obligations under the Lease by abandoning the Premises.

19.     Due to Reading Rock's breaches of the Lease, BCWC LLC and MMWC LLC, as beneficiaries with power of direction under Trust Agreement, for themselves and on behalf of Trustee, terminated the Lease and Reading Rock's right to possession of the Premises by notice dated October 19, 2006.

4

20.     To date, Reading Rock's breaches of the Lease have damaged BCWC LLC and MMWC, in the form of unpaid and outstanding rent, in the approximate amount of $160,000.00, plus Additional Rent and other expenses, including brokers' commissions as well as attorneys' fees incurred in enforcing Reading Rock's obligations under the Lease or resulting from Reading Rock's default under the Lease, in the approximate amount of $120,000.00, for an approximate total amount of damages of $280,000.00. Despite demand, Reading Rock has not paid the outstanding rent, Additional Rent, and other sums due.

WHEREFORE, BCWC LLC and MMWC LLC request the entry of judgment in their favor and against Reading Rock, Inc. in an amount to be determined at trial, plus including prejudgment interest and costs and expenses, including reasonable attorneys' fees, incurred in enforcing Reading Rock's obligations under the Lease, as well as for such other relief as the court deems just and appropriate.

BCWC LLC and MMWC LLC

By: _____
    One of their attorneys

Mark L. Johnson (#6204488)
Marcus Mintz (#6290255)
SEYFARTH SHAW LLP
131 South Dearborn-Suite 2400
Chicago, IL 60603
(312) 460-5000
Firm No. 90747

5

## LEASE

Lease made this ___1st___ day of July, 2004 between LaSALLE BANK NATIONAL ASSOCIATION, as Trustee under Trust No. 39745 ("LESSOR") and READING ROCK, INC., an Ohio corporation ("LESSEE").

## WITNESSED:

Lessor for and in consideration of the covenants and agreements hereinafter mentioned to be kept and performed by Lessee, has leased to Lessee the premises ("Demised Premises") in the City of West Chicago, County of DuPage, State of Illinois, known and described as follows: The land and the building and appurtenances thereunto belonging located at 1401 Harvester Street, West Chicago, Illinois, legally described in Exhibit A attached hereto and which included dock space of approximately 7,200 square feet containing 24 dock doors and approximately 2,000 square feet of office space. A site plan of Demised Premises is attached hereto as Exhibit B.

TO HAVE AND TO HOLD the same unto the Lessee from June 15, 2004 to and including May 31, 2007.

And the lessee in consideration of said demise, covenants and agrees with said Lessor as follows:

1.   RENT. To pay as rent for said Demised Premises the following sums:

| Period | Annual Rent | Monthly Installment |
|---|---|---|
| 7/1/04 – 5/31/05 | $92,400 | $7,700 |
| 6/1/05 – 5/31/06 | $95,172 | $7,931 |
| 6/1/06 – 5/31/07 | $98,028 | $8,169 |

All such monthly installments to be paid in advance upon the first day of each and every month of the said term at such place as may from time to time be designated in writing by Lessor, and in the absence of such designation, then at the office of Lessor, and at the current rate for fractions of a month if the term shall commence on any day other than the first day of any month or end or be terminated on any day other than the last day of any month.

2.   CONDITION OF PREMISES. The Lessee has examined and knows the condition of the Demised Premises, and has received the same in good order and repair, and acknowledges that no representations as to the condition and repair thereof have been made by the Lessor or its agents prior to or at the execution of this lease that are not herein expressed or endorsed hereon. Lessee will keep said premises, including all appurtenances, in good repair, replacing all broken glass with glass of the same size and quality as that broken; and replace all damaged plumbing fixtures with others of equal quality; and will keep said premises, including adjoining alleys, in a clean and healthful condition, according to the ordinances of the City of West Chicago, and the direction of the proper public officers, during the term of this lease, at Lessee's expense; and will, without injury to the roof, remove all snow and ice from the same when necessary, and will remove snow and ice from the sidewalks abutting said premises; and upon the termination of this Lease, in any way, will yield up said premises to Lessor in the same

condition and repair as at the commencement of this Lease (loss by fire or other casualty and ordinary wear excepted) and deliver the keys therefore at the place of payment of said rent.

3.    ASSIGNMENT, SUBLETTING, ETC.  Lessee will not overload the floors of said building with machinery or goods, nor assign this lease or any interest hereunder nor sublease the Demised Premises, without in each case the prior written consent of Lessor being first had and obtained (which consent Lessor will not unreasonably withhold or delay); and will not permit any transfer, by operation of law, of the interest in said premises acquired through this lease, and will not permit said premises to be used for any purpose other than as a freight terminal/warehouse for storage and distribution and as a light manufacturing facility of Lessee's block, cast stone, pavers, and other masonry building materials nor for any purpose that will increase the fire hazard of said building or disturb the tenants of the neighborhood; and will not permit the same to remain vacant or unoccupied for more than ten consecutive days; and will not allow any signs, cards or placards to be painted or placed thereon which would injure or cause injury to the building, nor permit any alteration of or addition to any part of said premises except by written consent of the Lessor, which consent will not be unreasonably withheld.  All alterations and additions to said premises shall remain for the benefit of Lessor unless otherwise provided in the consent required as aforesaid.  An occupancy permit must be granted for Lessee's use by the City of West Chicago.

4.    MECHANIC'S LIENS.  Lessee will not permit any mechanic's or materialmen's lien or liens to be placed upon said premises or any building or improvement thereon during the term hereof, and in case of the filing of any such lien Lessee will promptly pay same.  If default in payment thereof shall continue for thirty (30) days after written notice thereof from Lessor to the Lessee, the lessor shall have the right and privilege at Lessor's option of paying the same or any portion thereof without inquiry as to the validity thereof, and any amounts so paid, including attorneys' fees, expenses and interest, shall be so much additional rent due hereunder from Lessee to Lessor and shall be repaid to Lessor immediately on rendition of bill therefor.

5.    INDEMNIFICATION.  Lessee covenants and agrees that it will protect and save and keep the Lessor forever harmless and indemnified against and from any penalty or damage or charges imposed for any violation of any laws or ordinances, whether occasioned by the act or neglect of Lessee or by the act or neglect of its employees, agents, representatives, sublessees or assigns; and that Lessee will at all times protect, indemnify and save and keep harmless the Lessor, his heirs, personal representatives, successors and assigns, against and from any and all loss, cost, damage or expense, arising out of or from any accident or other occurrence on or about said premises, causing injury to any person or property whosoever or whatsoever, except as to damage or loss arising through negligence of Lessor, his agents and servants, and will protect, indemnify and save and keep harmless the Lessor, his heirs, personal representatives, successors and assigns, against and from any and all claims and against and from any and all loss, cost, damage or expense arising out of any failure of Lessee in any respect to comply with and perform all covenants, requirements and provisions hereof.

6.    LESSOR'S LIABILITY.  Lessor shall not be liable for any damage occasioned by failure to keep said premises in repair, nor for any damage done or occasioned by or from plumbing, gas, water, sprinkler, steam or other pipes or sewerage, or the bursting, leaking or running of any tank, washstand, water closet or waste pipe in, above, upon or about said building

or premises, nor for any damage occasioned by water, snow or ice being upon or coming through the roof, skylights, trap door or otherwise, nor for any damages arising from act or neglect of any owners or occupants of adjacent or contiguous property. Redress for any claim against Lessor under the Lease as amended hereby shall be limited to and enforceable only against and to the extent of Lessor's interest in the Demised Premises. The obligations of Lessor under the Lease are not intended to and shall not be personally binding on, nor shall any resort be had to the private properties of, any of its or its investment manager's trustees, directors, officers, partners, beneficiaries, members, stockholders, employees, or agents, and in no case shall either party be liable to the other party hereunder for any lost profits, damage to business, or any form of special, indirect or consequential damages.

7.    UTILITIES. Lessee will pay, in addition to the rent above specified, all water rents, gas and electric light and power bills taxed, levied or charged on the demised Premises, for and during the time for which this Lease is granted, and in case said water rents and bills for gas, electric light and power shall not be paid when due, Lessor shall have the right to pay the same, which amounts so paid, are declared to be so much additional rent and payable with the installment of rent next due thereafter.

8.    REPAIRS. Except for repairs to the roof and the structural components of the improvements (not including the electrical, plumbing, heating, air-conditioning systems) that are not occasioned or necessitated by the negligence or wilful conduct of Lessee, its agents, servants or employees, the Lessor shall not be obliged to incur any expense for repairing any improvements upon said Demised Premises or connected therewith and the Lessee at its own expense will keep all improvements otherwise in good repair (injury by fire, or other causes beyond Lessee's control excepted) as well as in a good, tenantable and wholesome condition, and will comply with all local or general regulations, laws and ordinances applicable thereto, as well as lawful requirements of all competent authorities in that behalf. Lessee will, as far as possible, keep said improvements from deterioration due to ordinary wear and from falling temporarily out of repair and Lessee further agrees to promptly attend to, comply with, and deliver to Lessor, all notices received from constituted authorities relating to the maintenance and operation of the improvements.

Lessee shall, at its own cost and expense, enter into a regularly scheduled preventive maintenance/service contract for servicing all heating and air conditioning systems and equipment serving the Demised Premises (and a copy thereof shall be furnished to Lessor). The service contract must include all services suggested by the equipment manufacturer in the operation/maintenance manual and must become effective within thirty (30) days of the date Lessee takes possession of the Demised Premises.

9.    INSPECTION. Lessee will allow Lessor free access at all reasonable hours to the Demised Premises for the purpose of examining or exhibiting the same, for making any needful repairs or alterations on said premises, which Lessor may see fit to make or to require Lessee to make, and will allow to have placed upon said premises, during the last six months of the term of this Lease, notices of "For Rent or For Sale", and will not interfere with the same.

10.    HOLDOVER. Lessee will, at the termination of this Lease by lapse of time or otherwise yield up immediate possession to Lessor, and failing to do so, will pay as liquidated

damages, for the whole time possession withheld the sum of FIVE HUNDRED DOLLARS ($500.00) per day, but the provision of this clause shall not be held as a waiver by Lessor of any right of re-entry as hereinafter set forth; nor shall the receipt of said rent or any part thereof, or any other act in apparent affirmance of tenancy, operate as a waiver of the right to terminate this Lease and the term hereby granted for the period still unexpired, for a breach of any of the covenants herein.

11. ADDITIONAL RENT. In addition to the fixed rental provided in this Lease as set forth in Paragraph 1 hereof, the Lessee covenants that it will pay and discharge during the full term of this Lease and extensions thereof, as "Additional Rent," each and every of the following, to-wit:

a. All of the maintenance and operation expenses, of every nature and description, of and in connection with all buildings and improvements now located upon, or hereafter erected or added to the said Demised Premises, and it is expressly agreed that, subject to the provisions of Section 8 above, the alterations, replacements and repairs herein referred to, include (but without limiting the generality hereof), the repair and maintenance of the interior and exterior of the building, and all plumbing, heating, carpentry, electrical and plastering work, and all other repairs of whatever kind, character and description necessary to keep and maintain the building in good condition, operation and maintenance and appearance; and that in the event of such repairs or alterations, Lessee agrees to make the same using like materials as presently contained in the construction of said premises, all such work to be done and performed in a first class, workmanlike manner; and to use, keep and maintain the heating plant in good order and repair. In the event the said heating plant, automatic equipment in connection therewith, hot water tank or heater, or either of them, are rendered inoperative or useless for any reason whatsoever during the term hereof, Lessee will repair or replace said equipment with others of the same general description, size and quality, so that the said premises will again have a heating plant properly and adequately to function and supply heat and hot water for the building.

b. The cost of all alterations, replacements and repairs, of whatsoever character, and whether now in the contemplation of the parties hereto or not, that may be necessary in order continually to keep the said premises in good condition, order and repair, and in conformity with local ordinances.

c. Commencing on the first payment of Rent and continuing for each and every month thereafter during the term hereof, Lessee shall deposit with Lessor on each rental payment date, an amount equal to one-twelfth (1/12th) of that portion of the real estate taxes or assessments ("Taxes") levied for the year and for each year thereafter during the term hereof as reasonably estimated by Lessor on the basis of the last available real estate tax bill. When yearly tax bills are due and payable, Lessee shall, if

4

required by Lessor, pay to Lessor such amount which when added to the monthly deposit, shall be sufficient to pay such Taxes or, if the amount previously paid by Lessee is in excess of the Taxes, Lessor shall refund such excess to Lessee.

12.    FIRE INSURANCE.

     a.    The Lessor, at Lessee's expense, shall keep the said building insured against loss or damage by fire and such other risks as shall be insurable under present or future standard forms of fire and extended coverage insurance policies in an amount of not less than its full replacement value.

     b.    Lessee, at its sole cost and expense, shall keep all of its personal property which is located at the Demised Premises insured against loss by casualty in an amount not less than its full replacement value.

13.    LIABILITY INSURANCE.  Lessee will keep in full force and effect Public Liability Insurance (which shall be written for the protection and benefit of Lessor and Lessee) providing for primary coverage with limits of not less than $2,000,000.00/$4,000,000.00 and property damage coverage of not less than $300,000.00 per occurrence.  All such insurance shall be effected under a valid or enforceable policy or policies issued by the insurers of recognized responsibility and authorized to do business in the State of Illinois and all such policies of insurance or certificates evidencing the same shall be delivered to and deposited with the Lessor. Renewal policies, or endorsements evidencing renewal, shall be delivered to Lessor not later than ten (10) days prior to the expiration thereof and in case of failure of Lessee so to do, Lessor may cause such insurance to be placed as aforesaid and in so doing the default of Lessee shall not be excused thereby and the cost thereof shall be Additional Rent payable to Lessor on demand.

Each certificate of insurance furnished by Lessee to Lessor hereunder shall provide that ten (10) day's prior written notice shall be given to Lessor in the event of cancellation of such policy or policies or in the event of any material changes therein.

14.    WAIVER OF SUBROGATION.  Each party hereto waives any and every claim which may arise in such party's favor against the other party hereto during the term of this Lease, or any extension thereof, for any and all loss of or damage to any of such party's property located within or upon, or constituting a part of the Demised Premises provided such loss or damage is insured against under valid and collectible fire and extended coverage insurance policies (or should have been insured pursuant to the provisions of Paragraph 12). Such mutual waivers shall be in addition to, and not in limitation, or derogation of, any other waiver or release contained in this Lease with respect to any loss of or damage to, property of the parties hereto. Each party hereby agrees promptly to give to each insurance company which has issued such party policies of fire and extended coverage insurance written notice of the terms of such mutual waivers, and to cause such insurance policies to be properly endorsed, if necessary, to prevent the invalidation of such insurance coverage by reason of such waivers.

15.    DAMAGE OR DESTRUCTION. In the event of substantial damage to or destruction of the Demised Premises by fire or other casualty, Lessor shall within sixty (60) days of the date of such casualty have the right to elect and shall notify the Lessee in writing of its election, either to (a) terminate this Lease as of the date of such casualty, or (b) repair, restore or rehabilitate the said premises, in which latter event this lease shall not terminate but the rent shall from the date of such casualty abate in the ratio which the portion of the premises rendered untenantable by such casualty bears to the portion of the premises thereof remaining usable, until the premises shall have been restored to a tenantable condition, provided that the extent of such restoration shall always be limited to the replacing of the premises to a condition reasonably similar to that existing before the occurrence of such casualty and, provided further however, that if Lessor shall elect to restore the premises and Lessee shall, in its reasonable opinion, determine that the restored premises shall not be adequate for Lessee's needs, Lessee may terminate this Lease and its obligation hereunder by notice in writing given to Lessor within ten (10) days after Lessee shall be notified by Lessor of its election to restore. In the event Lessor shall elect to repair, restore or rehabilitate the said premises and Lessee shall not have elected to terminate, the Lessor shall commence such work within forty (40) days after the making of the aforesaid election and shall complete such work within reasonable time thereafter; and upon the failure of Lessor to replace the premises as aforesaid within such reasonable time the Lessee may terminate this lease.

In the event that the Demises Premises are damaged or partially destroyed by fire or other casualty and such damage or destruction is less than substantial damage to or destruction of the Demised Premises as hereinafter defined, Lessor shall repair, restore or rehabilitate the said premises to a condition reasonably similar to that existing before the occurrence of such casualty and rent shall from the date of such casualty abate in the ratio which the portion of the premises rendered untenantable by such casualty bears to the portion thereof remaining usable until the entire premises shall have been restored to a tenantable condition.

For the purpose of this Paragraph, the phrase "substantial damage to or destruction of the Demised Premises" shall mean if more than 60% of the Demised Premises above the foundation is destroyed and cannot be used for the conduct of the principal business conducted by Lessee therein.

16.    ALTERATIONS BY LESSEE. Lessee shall not make or suffer to be made any alterations, additions, or improvements, including, but not limited to, the attachment of any fixtures or equipment in, on, or to the Demised Premises or any part thereof, without the prior written consent of Lessor, which consent will not be unreasonably withheld. When applying for such consent, Lessee shall, if requested by Lessor, furnish complete plans and specifications for such alterations, additions and improvements. Lessee further covenants that it will not make any agreement or contract, express or implied, for the construction, repair, or alteration of the building or other improvements now or hereafter standing upon or connected with said Demised Premises, or for any work to be done upon, or for any materials to be furnished for such construction, repair or alteration, without providing in such agreement or contract that any lien thereunder for labor or materials, or both, furnished in connection with such agreement, contract or work done on the Demised Premises shall be limited to affect Lessee's interest in the property only, and be subject to all of the rights of Lessor as in this Lease set forth, and that no lien

whatsoever shall be created, arise, or be of any validity as against the Lessor's interest in the Demised Premises.

17.     SUBORDINATION.  Lessee will, upon written demand by Lessor, execute such instruments as may be required at any time and from time to time to subordinate the rights and interests of Lessee under this Lease to the lien of any mortgage now or at any time hereafter placed on the land of which the Demised Premises are a part; provided that such subordination shall not affect Lessee's right to the possession of the Demised Premises so long as Lessee is not in default hereunder, and provided that Lessor shall, within thirty (30) days following the execution of this Lease or the execution and delivery of such mortgage or mortgages, whichever occurs latest, procure from the mortgagee or mortgagees (or owners or holders of any note or notes secured by trust deeds or from the trustee or trustees under any trust deeds) a written agreement (which agreement may be contained in such mortgage or mortgages) to the effect that if Lessor, its successor and assigns shall default under any such mortgage or mortgages, the mortgagees (or owner or holders or trustees, as aforesaid) will not, in enforcing their rights thereunder, disturb Lessee's possession under this Lease so long as Lessee is not in default hereunder.

18.     CONDEMNATION.  The Lessor shall have the right, privilege and option to declare this Lease null and void and determine and terminate the term thereof in manner hereinafter provided, in the event that:

    a.      Authorization be given under law for the taking and condemning of the Demised Premises or of the land whereon the said premises stand for public or quasi-public purposes and the sale thereof by Lessor, in lieu of such condemnation; or

    b.      Said premises or the land whereon said premises stand be condemned for public or quasi-public purposes by proper authorities.

In case of a condemnation or sale in lieu thereof, Lessee shall have no claim against Lessor nor shall it have any claim, right to claim, or be entitled to any amount that may be awarded as damages, or paid as a result of condemnation proceedings, or which shall be paid to Lessor as the purchase price of said premises; and all such damages and rights thereto or said purchase price are hereby declared to be the sole and exclusive property of Lessor, and Lessee hereby expressly assigns any right to participate in such proceeds of condemnation or sale. Nothing herein shall preclude Lessee from prosecuting a separate and distinct claim against the condemnor for damages alleged to be sustained which are separate and distinct from Lessor's claim so long as the assertion of such claim by Lessee shall not impair or reduce Lessor's claim to damages.

In the event of a condemnation or sale in lieu thereof of a portion of the Demised Premises or of a portion of the land upon which improvements are or shall be located for a public or quasi-public purpose or of a sale thereof to a public or quasi-public authority in lieu thereof, Lessee shall have no claim against Lessor nor any claim, right or interest in the proceeds of any award for damages or the purchase price thereof and all such damages and rights thereto or said purchase price are hereby declared to be the sole and exclusive property of Lessor, and Lessee

hereby expressly assigns any rights to such proceeds of condemnation or sale which it might have by virtue of its interest hereunder, or which it may hereafter in any manner acquire, irrevocable to Lessor, and in the event of such partial taking as aforesaid, this lease shall terminate as to the part so taken but shall remain in full force and effect as to the portion of the premises not so taken upon all of the terms and conditions herein mentioned except that the rental shall be equal to the ratio of the fixed rental which the number of loading doors usable by Lessee bears to 24. In the event of such partial taking, Lessor shall have the right, at its option, to restore the premises to a tenantable condition, in which event Lessor shall so restore the premises within a reasonable time; but if the premises are not restored to a tenantable condition within 6 months after such partial taking, Lessee may terminate this Lease upon giving written notice to Lessor, in which event liability for rent hereunder shall cease. If Lessee occupies part of the premises while it is being restored to tenantable conditions, Lessee shall pay as rent during such period that ratio of the fixed rental which the number of loading doors occupied by Lessee bears to 24. If Lessor elects not to restore the premises to tenantable conditions, Lessor shall notify Lessee in writing within 30 days of such partial taking, and this Lease shall thereupon terminate, in which event liability for rent hereunder shall cease. If less than 25% (on a square foot basis) of the building be so taken or condemned, so that 75% or more thereof shall remain usable, then and in that event Lessee may, notwithstanding any election made by Lessor as hereinabove in this paragraph provided, cause the premises to be restored to a tenantable condition upon the same terms and conditions as in the case of partial loss or damage by fire or other casualty as provided in paragraph numbered 15 of this Lease, and Lessor shall apply the net proceeds of the condemnation award or sale in lieu thereof toward the cost of such restoration. In the event of a condemnation or sale in lieu thereof of such portion of the Demised Premises as in Lessee's reasonable opinion would preclude the remaining premises from being adequate for Lessee's needs, then regardless of Lessor's election or obligation to restore the premises Lessee shall have the right to terminate this Lease by notice in writing given on or before 10 days after such partial taking.

If this Lease shall be terminated in accordance with any of the above and foregoing provisions of this paragraph 18 such termination shall be effective as of the date, but not until, actual possession is taken by the authority condemning or taking the Demised Premises or portion thereof, as the case may be.

In the event of the taking or condemnation of a portion of the Demised Premises and if this Lease be not terminated under and pursuant to the above and foregoing provisions of this paragraph 18, Lessee shall be entitled to as abatement of rent (except as where otherwise specifically provided) in the ratio aforesaid, such abatement of rent to commence as of the date actual possession is taken of the portion so condemned or taken by the authority condemning or taking. It is specifically understood that in no event shall the termination of this Lease as above provided for or the abatement of rent where this Lease be not terminated become effective as of a date later than the date the condemnation award or proceeds of sale be paid to Lessor.

19. DEFAULT AND REMEDIES.

19.01 EVENTS OF DEFAULT. Each of the following shall constitute an Event of Default by Lessee under this Lease:

A.      If Lessee fails to pay any installment of rent or Additional Rent when due and the same shall remain unpaid for ten days after the same becomes due;

B.      If Lessee fails to observe or perform any of the other covenants, conditions or provisions of this Lease to be observed or performed by Lessee and fails to cure such default within 30 days after written notice to Lessee (except that if such default cannot by its nature be cured within thirty (30) days, and if Lessee commences to cure such default promptly after notice thereof and thereafter diligently pursues the curing thereof (and in all events cures such default within sixty (60) days after notice thereof, Lessee shall not be in default during such period of diligent curing);

C.      If the interest of Lessee in this Lease is levied upon under execution or other legal process;

D.      If a petition is filed by or against Lessee to declare Lessee bankrupt or seeking a plan of reorganization or arrangement under any chapter of the Bankruptcy Code, or any amendment, replacement or substitution therefor, or to delay payment of, reduce or modify Lessee's debts, or any petition is filed or other action taken to reorganize or modify Lessee's capital structure or to dissolve Lessee (except that Lessee shall not be in default caused by the filing of an involuntary petition under the Bankruptcy Code, as amended from time to time, provided that said petition shall be dismissed within sixty (60) days from the filing thereof).

E.      If Lessee is declared insolvent by law or any assignment of Lessee's property is made for the benefit of creditors;

F.      If a receiver is appointed for Lessee or Lessee's property; or

G.      If Lessee abandons the Demised Premises.

19.02   LESSOR'S REMEDIES. Upon the occurrence of an Event of Default by Lessee under this Lease, Lessor, at its option, without further notice or demand to Lessee, may in addition to all other rights and remedies provided in this Lease, at law or in equity:

A.      Terminate this Lease and Lessee's right to possession of the Demised Premises, and recover all damages to which Lessor is entitled under law, specifically including, without limitation, the present value of all rent remaining for the unexpired term, such present value to be computed on the basis of a per annum discount at a rate equal to five percent (5%), and all of Lessor's expenses of reletting (including repairs, alterations, improvements, additions, decorations, legal fees and brokerage commissions).

B.      Terminate Lessee's right to possession of the Demised Premises without terminating this Lease, in which even Lessor may, but shall not be obligated to, relet the premises, or any part thereof for the account of Lessee, for such rent and term and upon such terms and conditions as are acceptable to Lessor. Notwithstanding the preceding sentence to the

contrary, Lessor agrees to take reasonable measures to mitigate the damages recoverable against Lessee. For purposes of such reletting, Lessor is authorized to decorate, repair, alter and improve the premises to the extent reasonably necessary. If Lessor does not relet the premises, then Lessee shall pay Lessor monthly on the first day of each month during the period that Lessee's right of possession is terminated, a sum equal to the amount of rent due under this Lease for such month (less any amount which Lessor could have realized if Lessor relet the premises to a reputable, creditworthy substitute tenant procured by Lessee and presented to Lessor in writing, which substitute tenant was ready, willing and able to lease the entire premises from Lessor under a lease in form identical to the form of this Lease). If the premises are relet and a sufficient sum is not realized from such reletting after payment of all Lessor's expenses of reletting (including repairs, alterations, improvements, additions, decorations, legal fees and brokerage commissions) to satisfy the payment of rent due under this Lease for any month, Lessee shall pay Lessor any such deficiency monthly upon demand. Lessee agrees that Lessor may file suit to recover any sums due to Lessor under this section from time to time and that such suit or recovery of any amount due Lessor shall not be any defense to any subsequent action brought for any amount not previously reduced to judgement in favor of Lessor. If Lessor elects to terminate Lessee's right to possession only without terminating this Lease, Lessor may, at its option, enter into the premises, remove Lessee's signs and other evidences of tenancy, provided, however, that such entry shall not terminate this Lease or release Lessee, in whole or in part, from Lessee's obligation to pay the rent reserved hereunder for the full term or from any other obligation of Lessee under this Lease.

19.03   ATTORNEYS' FEES. Lessee shall pay, upon demand, all costs and expenses, including reasonable attorneys' fees, incurred by Lessor in successfully enforcing Lessee's obligations under this Lease and or resulting from Lessee's default under this Lease. Lessor shall pay, upon demand, all costs and expenses, including reasonable attorneys' fees, incurred by Lessee in successfully enforcing Lessor's obligations under this Lease.

19.04   RECEIPT AFTER DEFAULT. No receipt of money by Lessor from Lessee after the termination of this Lease or of the demised term or after the service of any notice (excepting within the time allowed in and by said notice) or after the commencement of any suit, or after final judgment for possession of the Demised Premises, shall reinstate, continue, or extend the term of this Lease of affect any such notice, demand or suit.

19.05   REMEDIES NOT EXCLUSIVE. Except as herein expressly provided to the contrary, no remedy or right available to, or herein conferred upon or reserved to the Lessor, is intended to be to the exclusion of any other remedy or right of the Lessor, but each and every such remedy or right shall be cumulative and each and every such remedy or right may be exercised from time to time and as often as may be deemed expedient, and shall be in addition to any other remedy or right given hereunder, or now or hereafter existing in law or in equity. The use of any remedy or right or of the exercise thereof, shall not be construed to exhaust such remedy or right, but the same may be repeated as often as may be required or deemed necessary by the Lessor.

No delay or omission to exercise any right or any remedy accruing on any Event of Default, action or omission shall impair any such remedy or right, nor shall any such delay or omission be construed to be a waiver of any such default, action or omission, or acquiescence

therein, nor shall it affect any subsequent default of the same or of a different nature and every such remedy or right may be exercised from time to time and as often as may be deemed expedient. The failure to use or exercise any remedy or right or the non-exercise thereof shall not be construed to impair the right of Lessor, but the same may be used and repeated at any time and from time to time as often as may be required or deemed necessary by Lessor.

That no waiver of any breach of any of the covenants of this lease shall be construed, taken or held to be a waiver of any other breach, or as to the acquiescence in or consent to any further, other or succeeding breach of the same, or other, covenant, agreement and undertaking.

20.     SECURITY DEPOSIT. As security for the performance of its obligation under this Lease, Lessee upon its execution of this Lease has paid to Lessor a security deposit ("Security Deposit") in the amount of $7,700.00. Lessor may, but shall not be obligated to, apply the Security Deposit to cure any default by Lessee under this Lease, and upon notice by Lessor of such application, Lessee shall replenish the Security Deposit in full by promptly paying to Lessor the amount so applied. Lessor shall not pay any interest on the Security Deposit. Within sixty (60) days after the expiration of the term of this Lease by lapse of time Lessor shall return the balance of the Security Deposit, if any, to Lessee.

21.     OPTION TO EXTEND. Lessee shall have and is hereby given two options, provided the original term hereof shall not have been terminated prior to its expiration by lapse of time, to extend the term hereof for a period of two (2) years each commencing upon the termination of the previous term, upon the same terms and conditions hereof and at an annual rental as follows:

| Period | Annual Rent | Monthly Installment |
|--------|-------------|---------------------|
| 6/1/06 – 5/31/07 | $100,968 | $8,414 |
| 6/1/07 – 5/31/08 | $104,004 | $8,667 |
| 6/1/08 – 5/31/09 | $107,112 | $8,926 |
| 6/1/09 – 5/31/10 | $110,328 | $9,194 |

The option to extend granted hereby may be exercised and the term hereof so extended by written notice to Lessor of the intention of the Lessee so to extend the term of this Lease given on or before the date which is 6 months prior to the termination of the then current term.

22.     ENVIRONMENTAL.

22.01     ENVIRONMENTAL PROTECTION. Lessee shall not cause or permit to occur:

(1)     Any violation of any present or future federal, state or local law, ordinance or regulation related to environmental conditions in or about the Demised Premises, including but not limited to, improvements or alterations made to the premises at any time by Lessee, its agents or contractors, or

(2)     the use, generation, release, manufacture, refining, production, processing, storage or disposal of any "Hazardous Substances" (as hereinafter defined) in or about the Demised Premises, or the transportation to or from the Demised Premises of any Hazardous

Substances in violation of any present or future federal, state or local law, ordinance or regulation.

Lessee, at its expense, shall comply with each present and future federal, state and local law, ordinance and regulation related to environmental conditions, in or about the Demised Premises or Lessee's use of the premises, including, without limitation, all reporting requirements and the performance of any cleanups required by any governmental authorities. Lessee shall indemnify, defend and hold harmless Lessor, his heirs, personal representatives, successors and assigns from and against all fines, suits, claims, actions, damages, liabilities, costs and expenses (including attorney's and consultants' fees) asserted against or sustained by any such person or entity arising out of or in any way connected with Lessee's failure to comply with its obligations under this Section 22.01, which obligations shall survive the expiration or termination of this lease.

22.02  <u>HAZARDOUS SUBSTANCES</u>.  As used in this Section 22, "Hazardous Substances" shall include, without limitation, flammable, explosives, radioactive material, asbestos containing materials (ACMs), polychlorinated byphenyls (PCBs), chemicals known to cause cancer or reproductive toxicity, pollutants, contaminants, hazardous wastes, toxic substances, petroleum and petroleum products, chlorofluorocarbons (CFCs) and substances declared to be hazardous or toxic under any present or future federal, state or local law, ordinance or regulation.

22.03  <u>RECYCLING</u>.  Lessee, at its expense, agrees to comply with each present and future federal, state and local law, ordinance and regulation regarding the collection, sorting, separation and recycling of waste products, garbage, refuse and trash (collectively, the "Wastes") in or about the Demised Premises.

23.  <u>NOTICES</u>.  Wherever provision is made herein for the giving, sending or delivering of notices, demands, advices, statements, remittances, etc., the same shall be in writing and delivered by overnight courier or sent by United States registered or certified mail, postage prepaid, return receipt requested to the Lessor or Lessee at the addresses for said respective parties as hereinbelow set out, or at such other address as such Lessor or Lessee may from time to time give to the other party:

|  | |
|---|---|
| TO THE LESSOR: | Beatrice G. Crain |
| | 505 North Lake Shore Drive |
| | Apartment 5906 |
| | Chicago, IL  60611 |
| | |
| TO THE LESSEE: | Brian Campbell |
| | Vice President & CFO |
| | Reading Rock, Incorporated |
| | 4600 Devitt Drive |
| | Cincinnati, OH  45246 |

Notices shall be deemed to be given as of the day of delivery if by courier or the second business day after the mailing thereof.

CH1 10729827.2 / 52246-000002

12

24. SURRENDER OF PREMISES. All alterations, additions, and improvements in, on, or to the Demised Premises made or installed by or for Lessee, including carpeting (collectively, "Alterations"), shall be and remain the property of Lessee during the Term. Upon the expiration or sooner termination of the Term, all Alterations shall become a part of the realty and shall belong to Lessor without compensation, and title shall pass to Lessor under this Lease as by a bill of sale. At the end of the Term or any renewal of the Term or other sooner termination of this Lease, Lessee will peaceably deliver up to Lessor possession of the Demised Premises, together with all Alterations by whomsoever made, in the same conditions received or first installed, broom clean and free of all debris, excepting only ordinary wear and tear and damage by fire or other casualty. Notwithstanding the foregoing, if Lessor elects by notice given to Lessee at least ten (10) days prior to expiration of the Term, Lessee shall, at Lessee's sole cost, remove any Alterations, including carpeting, so designated by Lessor's notice, and repair any damage caused by such removal. Lessee must, at Lessee's sole cost, remove upon termination of this Lease, any and all of Lessee's furniture, furnishings, movable partitions of less than full height from floor to ceiling and other trade fixtures and personal property (collectively, "Personalty"). Personalty not so removed shall be deemed abandoned by the Lessee and title to the same shall thereupon pass to Lessor under this Lease as by a bill of sale, but Lessee shall remain responsible for the cost of removal and disposal of such Personalty, as well as any damage caused by such removal.

25. SUCCESSORS AND ASSIGNS. This lease shall be binding upon the Lessor, his successors and assigns and upon the Lessee, its successors and assigns and all those, if any, claiming by, through or under each of them.

IN WITNESS WHEREOF, the parties hereto have executed this Lease all as of the day and year first above written.

**LESSOR**:

LaSALLE BANK NATIONAL ASSOCIATION
As Trustee under Land Trust No. 39745

By:_____Executor
Estate of Louis Goldberg, Its Beneficiary

**LESSEE**:

READING ROCK, INC., an Ohio corporation

By:_____
Brian R. Campbell, Vice-President and CFO
Reading Rock, Incorporated
4600 Devitt Drive
Cincinnati, OH 45246

## EXHIBIT A

The South 600.00 feet of East 433.0 feet of the West 458.0 feet of the East 2104.03 feet of that part of the South East quarter of Section 32, Township 40 North, Range 9, East of the Third Principal Meridian, lying North of the North line of Harvester Road as dedicated by Plat recorded August 12, 1969 as Document R69-36215, in Du Page County, Illinois



**EXHIBIT** B