# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BCWC LLC and MMWC LLC, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | No. 07 C 2356 |
| READING ROCK, INC., ) | Judge Marvin E. Aspen |
| ) | |
| Defendant, ) | |
| ) | |
| -------------------------------------------------- ) | |
| READING ROCK, INC. ) | |
| ) | |
| Defendant/Counter-Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| BCWC LLC and MMWC LLC ) | |
| ) | |
| Plaintiffs/Counter-Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, BCWC LLC and MMWC LLC ("Land Trust"), move to dismiss Defendant, Reading Rock Inc.'s ("Reading Rock"), counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Reading Rock has made three counterclaims: (1) fraudulent inducement relating to representations allegedly made by the Land Trust prior to the execution of the lease ("Count I"); (2) constructive eviction as a result of the building not meeting code requirements of the City of West Chicago ("Count II"); and, in the alternative, (3) rescission of the contract based on the alleged fraudulent misrepresentation ("Count III"). In response, the Land Trust argues that all claims should be dismissed due to specific terms

1

in the lease. In addition, the Land Trust contends that Count II should be dismissed because the alleged conduct took place prior to execution of the lease and because Reading Rock did not vacate the property in a reasonable amount of time.

For the reasons stated below, we deny the Land Trust's motion to dismiss.

## **STANDARD OF REVIEW**

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), we must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005). Dismissal is warranted only when no facts in support of the plaintiff's claim would entitle her to relief, *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003), though "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombley*, 127 S. Ct. 1955, 1965 (2007). Furthermore, a copy of any written instrument that is an exhibit to a complaint is considered to be a part of the pleadings, Fed. R. Civ. P. 10(c), and as a general principle, when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations. *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 991 (7th Cir. 1999).[1]

## **BACKGROUND**

According to the counter-complaint, Reading Rock is an Ohio corporation engaged in the business of manufacturing and supplying masonry products. The Land Trust, BCWC LLC and MMWC LLC, are Illinois limited liability companies and hold commercial property at 1401

---

[1] A copy of the lease was attached to Reading Rock's counterclaim, and thus is considered a part of the pleadings.

Harvester Street, West Chicago, Illinois ("Premises") under a Trust Agreement. On July 1, 2004, the Land Trust entered into a lease agreement ("Lease") as Lessor with Reading Rock, as Lessee, for the Premises to be used for storing masonry products. Prior to entering into the Lease, in May 2004 agents of the Land Trust represented to Reading Rock that the premises were available for immediate occupancy. However, the City of West Chicago told the Land Trust on at least seven prior occasions between 1992 and 2001 that there were numerous building and fire code violations, and that repairs needed to be made to the parking lot, which the Land Trust failed to fix. Furthermore, on April 18, 2001, the City of West Chicago wrote a letter to the Land Trust stating that no one could occupy the property until a Certificate of Occupancy is issued, which would require a satisfactory application and approval. These code violations and the Certificate of Occupancy requirement were never disclosed to Reading Rock.

After commencement of the Lease, the West Chicago Fire Protection District inspected the Premises and found more than five serious problems. The premises were still uninhabitable as of November 2004 when Reading Rock submitted its Application of Special Use Permit to the City of West Chicago, which it resubmitted in December 2004. On or about December 20, 2004, the City of West Chicago informed Reading Rock that the Application was incomplete. On December 28, 2004, the City required Reading Rock that it was required to install perimeter and parking lot landscaping on the Premises.

In December 2004, Reading Rock asked that the Lease be mutually terminated because these problems made it impossible or impracticable for Reading Rock to occupy the Premises. The Land Trust denied the request. In January 2005 the City of West Chicago inspected the Premises again and identified seven problems. Despite being unable to occupy the premises, Reading Rock made

3

lease payments from July 2004 through February 2005. In October 2006, the Land Trust terminated the Lease and sold the Premises to a third party.

The Land Trust filed suit to recover unpaid rent and other incidental damages. In response, Reading Rock makes three counterclaims: fraudulent inducement, constructive eviction, or in the alternative, rescission of the contract.[2] The Land Trust has moved to dismiss these counterclaims.

## ANALYSIS

**I. Fraudulent Inducement Claim**

In Count I, Reading Rock claims that it entered into the lease based on the fraudulent misrepresentations of the Land Trust. In order for a misrepresentation to constitute fraud, Rolling Rock must establish that there was: "'[1] a representation in the form of a material fact; [2] made for the purpose of inducing a party to act; [3] it must be false and known by the party making it to be false, or not actually believed by him, on reasonable grounds, to be true; and [4] the party to whom it is made must be ignorant of its falsity, must reasonably believe it to be true, must act thereon to his damage, and in so acting must rely on the truth of the statement.'" *Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.*, 371 Ill. App. 3d 1019, 1030-31, 864 N.E.2d 927, 939 (1st Dist. 2007) (quoting *James v. Lifeline Mobile Medics*, 341 Ill. App. 3d 451, 456, 792 N.E.2d 461, 465 (4th Dist. 2003)).[3] To satisfy the reliance element of a fraud claim, a plaintiff must show

---

[2] While rescission represents a different remedy than the fraudulent inducement claim, it is still subjected to the same analysis under 12(b)(6). As a result, this order does not separately address the rescission claim.

[3] Subject matter jurisdiction in this case is premised on diversity jurisdiction, and thus we apply the substantive law of Illinois, the forum state. *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 877 (7th Cir. 2005).

that she was justified in relying on the misrepresentation. *Davis v. G/N. Mortgage Corp.*, 396 F.3d 869, 882 (7th Cir. 2005) (citing *Soules v. Gen. Motors Corp.*, 79 Ill. 2d 282, 402 N.E.2d 599, 601 (Ill. 1980)).

At issue is whether Reading Rock could have justifiably relied on the truth of the alleged misrepresentations in light of Section 2 of the Lease. Section 2 states, in relevant part:

> Condition of Premises. The Lessee has examined and knows the condition of the Demised Premises, and has received the same in good order and repair, and acknowledges that no representations as to the condition and repair thereof have been made by the Lessor or its agents prior to or at the execution of this lease that are not herein expressed or endorsed hereon.

(Lease ¶ 2). The parties disagree on the nature of this clause. Reading Rock claims it is an exculpatory clause, while the Land Trust claims it is a full integration clause. For the purposes of this opinion, that disagreement need not be decided because neither type of clause bars evidence of misrepresentations in fraud claims. *See Deluxe Media Services, LLC v. Direct Disc Network, Inc.*, No. 06 C 1666, 2007 WL 707544, at *6 (N.D. Ill. Mar. 2, 2007) (integration clause); *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 351 Ill. App. 3d 752, 760, 814 N.E.2d 960, 968 (1st Dist. 2004) (integration clause)*; Zimmerman v. Northfield Real Estate, Inc.*, 156 Ill. App. 3d 154, 165, 510 N.E.2d 409, 415-16 (1st Dist. 1986) (exculpatory clause).

In *W.W. Vincent*, the First District Appellate Court of Illinois overturned a dismissal by the trial court that had found a fraud claim could not proceed based on an integration clause in the contract. The clause there stated: "This Agreement . . . supercedes all prior discussions and agreements between the parties with respect to the subject matter of this Agreement, and this Agreement . . . contains the sole and entire agreement between the parties hereto with respect to the subject matter hereof." *W.W. Vincent*, 351 Ill. App. 3d at 758, 814 N.E.2d at 966. The court held

5

that "the parole evidence rule . . . has no application to cases sounding in tort. . . . [T]he presence of an integration clause in the agreement does not bar the plaintiff's actions for fraud." *Id.* at 761, 814 N.E.2d at 968. "'All an integration clause does is limit the evidence available to the parties should a dispute arise over the meaning of the contract. It has nothing to do with whether the contract was induced [] by fraud.'" *Id.* at 760, 814 N.E.2d at 968 (quoting *Vigortone AG Products, Inc. v. PM AG Products, Inc.*, 316 F.3d 641, 644 (7th Cir. 2002)). Thus, the alleged fraudulent misrepresentations made prior to entering into the agreement were not barred by the integration clause for the purposes of the motion to dismiss.

In the present case, Reading Rock alleges that agents of the Land Trust fraudulently misrepresented the condition of the Premises, specifically that the Premises were immediately inhabitable when in fact the City of West Chicago would not issue an occupancy permit until numerous building code violations, which pre-existed the Lease, were remedied. Even assuming that Section 2 of the Lease is an integration clause, it does not significantly differ from the one at issue in *W.W. Vincent*.

The Land Trust relies on *Runnemede Owners, Inc.*, 861 F.2d 1053, (7th Cir. 1988), *Davis v. G/N. Mortgage Corp.*, 396 F.3d 869 (7th Cir. 2005), and *Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201 (7th Cir. 1998) in support of its dismissal motion. These cases differ from the current case, however, because they dealt with misrepresentations that were expressly contradicted by the terms of their respective contracts, rather than integration clauses.[4] The terms of the contract in this case do not bar Reading Rock from alleging reasonable reliance on the

---

[4] Furthermore, *Davis* and *Regensberger* were appeals of summary judgment motions pursuant to Fed. R. Civ. P. 56(c), not motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

fraudulent misrepresentations of the Land Trust at this stage of the proceedings.

Notwithstanding the terms of the contract, "[w]hen addressing the issue of justified reliance, Illinois courts have long recognized that 'a party is not justified in relying on representations made when he has ample opportunity to ascertain the truth of the representations before he acts.'" *Davis*, 396 F.3d at 882 (quoting *Elipas Enterprises, Inc. v. Silverstein*, 243 Ill. App. 3d 230, 612 N.E.2d 9, 13 (1993)). In its pleadings, Reading Rock alleges that the code violations in the Premises were latent, and thus, unknowable to it prior to entering into the Lease. Since we are required to accept this fact as true pursuant to Rule 12(b)(6), it is possible that Reading Rock justifiably relied on the alleged misrepresentations of the Land Trust.

As a result, Reading Rock has sufficiently pled the elements of fraudulent inducement in its counterclaim, and the Land Trust's motion to dismiss is denied.

## II. Constructive Eviction Claim

Count II of Reading Rock's counterclaim is that the misrepresentation of the Land Trust and the failure of the site to meet code requirements constitute constructive eviction. "Constructive eviction is something of a serious and substantial character done by the landlord with the intention of depriving the tenant of the enjoyment of the premises." *Am. Nat'l Bank & Trust Co. v. Sound City, U.S.A., Inc.*, 67 Ill. App. 3d 599, 601, 385 N.E.2d 144, 145 (2d Dist. 1979). "The question of whether a tenant has been constructively evicted is one of fact." *Applegate v. Inland Real Estate Corp.*, 109 Ill. App. 3d 986, 989, 441 N.E.2d 379, 382 (2d Dist. 1982); *see also Dell'Armi Builders, Inc. v. Johnston*, 172 Ill. App. 3d 144, 153, 526 N.E.2d 409, 412 (1st Dist. 1988).

The Land Trust makes four claims: (1) that the alleged misrepresentation is not of a grave and permanent character; (2) that acts prior to execution of the lease cannot be considered for

constructive eviction; (3) that the terms of the lease bar such a claim; and (4) that Reading Rock did not vacate the Premises in a reasonable amount of time. We will address each of these claims in turn below.

First, whether a lessor's action is of a serious and substantial character is a question of fact. *Appelgate*, 109 Ill. App. 3d at 989, 441 N.E.2d at 382. Determinations of fact are beyond the scope of a 12(b)(6) motion, and thus this ground for dismissal is denied.

Secondly, even though the Land Trust's alleged misrepresentations occurred prior to entering into the Lease, this timing does not preclude a claim for constructive eviction. *Id.* at 990, 441 N.E.2d at 382-83 (building manager's false representation that apartment did not have a cockroach problem prior to lease did not bar claim for constructive eviction, even though plaintiff attempted to move in prior to commencement of the lease).

Also, the Lease does not clearly state which party is responsible for building code violations that existed prior to the execution of the contract. For example, Section 2 states that "[t]he Lessee . . . has received the [Premises] in good order in repair." It is unclear whether "good order and repair" means that no building code violations existed when the parties executed the Lease. Section 8 is similarly vague as to whether Reading Rock is responsible for repairs and compliance with local ordinances pertaining to issues that existed prior to entering into the Lease.

Finally, whether a tenant vacated the premises in a reasonable amount of time is "usually a question of fact." *Dell'Armi Builders*, 172 Ill. App. 3d at 149, 526 N.E.2d at 412.[5] Therefore, this ground for dismissal pursuant to Rule 12(b)(6) is denied. Accordingly, it would be improper to

---

[5] Also, the counter-complaint states that Reading Rock never occupied the premises. Given that we must accept a plaintiff's statements as true under Rule 12(b)(6), *Moranski*, 433 F.3d at 539 (7th Cir. 2005), this fact would be an alternate ground for denying the motion.

dismiss the counterclaims at this juncture.

## **CONCLUSION**

For the reasons stated above, we deny the Land Trust's motion to dismiss Reading Rock's counterclaims under Federal Rule 12(b)(6).

It is so ordered.

                                        Honorable Marvin E. Aspen
                                        U.S. District Court Judge

Dated: October 10, 2007